UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| CMH HOMES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 3:05-CV-552 |
| | )  (Phillips/Shirley) |
| UNITED STATES FIDELITY | ) |
| & GUARANTY COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

The matter presently before the Court involves an insurance coverage dispute. The plaintiff insured has filed a motion for partial summary judgment [Doc. 11], and the defendant insurer has filed a cross motion for summary judgment [Doc. 19]. Replies and responses to these motions have been received. For the reasons that follow, plaintiff's motion for partial summary judgment [Doc. 11] and defendant's motion for summary judgment [Doc. 19] are **DENIED with leave to re-file**.

### I.  Summary of the facts

The Court merely provides an abridged summary of facts for the purposes of this opinion. On February 5, 2003, Jennifer L. Claxton was driving her automobile when struck from behind by an automobile being driven by Thomas Hodges. The impact caused her vehicle to collide head-on with an oncoming manufactured home being transported by a

1

vehicle owned and operated by Mobile Homes Broker Transport, Inc. ("MHBT"). Unfortunately, Ms. Claxton did not survive the collision.

The Estate of Jennifer L. Claxton filed suit on behalf of the deceased, Jennifer L. Claxton, and her minor daughter in the Sevier County Circuit Court against CMH Homes, Inc. ("CMH"), the manufacturer of the mobile home,[1] as well as others, in a case styled *Claxton, et al. v. Hodges, et al.*, Case Number 2003-595-IV. The allegations against CMH in the lawsuit were as follows: (1) CMH negligently failed to obtain the proper permit to move an oversized home; (2) CMH negligently allowed the movement of a manufactured home during prohibited hours in violation of TDOT rules; and (3) CMH negligently hired MHBT without first determining whether the towed vehicle was capable of safe operation, and without determining whether the driver of the towing vehicle had a valid commercial driver's license. The Estate alleged that CMH's "acts of negligence ... were the proximate cause of the automobile collision which took the life of the deceased Jennifer L. Claxton."

At the time of the accident, CMH was the named insured on two relevant policies of insurance issued by United States Fidelity and Guaranty ("USF&G"). These policies were the Commercial General Liability ("CGL") policy and Business Auto Coverage ("BAC") policy. Under CMH's CGL policy, CMH was required to pay a one million dollar ($1,000,000.00) deductible in connection with underlying litigation prior to USF&G's

---

[1] CMH is a Tennessee corporation engaged in the business of selling manufactured homes through sales centers located at various places across the United States, including a sales center located on Highway 66 in Sevier County, Tennessee known as "Clayton in the Smokies." The manufactured home involved in the accident was purchased from Clayton in the Smokies.

incurring any liability. As such, under CMH's CGL policy, USF&G would only incur liability for underlying litigation after the $1,000,000.00 deductible was exhausted. In addition, under the CGL policy, the liability coverage limit per "occurrence" was $1,000,000.00.[2] Under the BAC policy, CMH was required to pay a five-hundred thousand dollar ($500,000.00) deductible prior to USF&G incurring any financial liability. As such, USF&G would incur liability after the $500,000.00 deductible was exhausted. Morever, under the BAC policy, USF&G's liability exposure was $500,000.00, that is, the $1,000,000.00 liability coverage limit, less the $500,000.00 deductible.

During the course of the underlying litigation, USF&G asserted that only the CGL policy, and not the BAC policy, was applicable and that any losses arising out of the underlying litigation would be covered under the CGL policy. Following mediation in the tort action, CMH settled the claims asserted against it for one million one-hundred thousand dollars ($1,100,000.00). To date, USF&G has not paid any amount of the settlement. Accordingly, CMH filed the instant suit requesting declaratory judgment that the BAC policy provides coverage with respect to the underlying tort litigation. CMH also asserts claims based upon breach of contract, violation of the Tennessee Consumer Protection Act ("TCPA"), and bad faith refusal to pay insurance claim. The instant motions for summary judgment address and argue the declaratory judgment count of plaintiff's amended complaint.

---

[2] Under the CGL policy, USF&G had no financial exposure for the underlying claim.

## II. Law applicable to Rule 56 of the Federal Rules of Civil Procedure

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted by a court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. A court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir.1997); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987).

Once the moving party presents evidence sufficient to support a motion under Rule 56 of the Federal Rules of Civil Procedure, the nonmoving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence, which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir. 1996).

### III. Motions for summary judgment and applicable law

The insuring agreement of the business auto policy provides in relevant part that "[USF&G] will pay all sums 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" USF&G provides descriptions of covered autos with designated symbols in the Business Auto Coverage Form. Symbol "1" indicates "Any 'Auto'" without further commentary, and Symbol "9" corresponds to "Nonowned 'Auto Only,'" stating "[o]nly those 'autos' you do not own, lease, hire, rent or borrow that are used in connection with your business ...." The Declaration for CMH's BAC policy designates symbol "1," "Any Auto," for liability coverage.

The issue before the Court, raised by both parties, is whether the business auto policy provides coverage with respect to the February 5, 2003 car accident involving Jennifer L. Claxton. The plaintiff argues that the "Any Auto" language is a broad, all-inclusive term that, as the ordinary plain meaning of the word "any" suggests, encompasses any and every auto. In the alternative, the plaintiff argues that the non-owned auto section, corresponding to Symbol "9," would encompass the MHBT vehicle in that the MHBT vehicle was "used in connection with [CMH's] business." The defendant responds that the allegations in the underlying litigation against CMH only trigger the umbrella policy because the claims against CMH did not relate to the ownership, maintenance, or use of an auto. The defendant also contends that the auto at issue, i.e. the MHBT vehicle, was not a covered auto under the BAC insurance policy because the

"Any Auto" designation would certainly not be construed so generally all inclusive. Further, the defendant asserts that, under the non-owned auto section, MHBT's hauling of CMH's product was not in connection with CMH's business but in connection with MHBT's business.

Federal courts sitting pursuant to their diversity jurisdiction must apply the law of the forum state. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). However, it does not appear that the Tennessee Courts have been faced with similar facts and issues as in the case at bar. In the subject matter, the Court looks to sister circuits and other state courts to provide guidance in formulating a framework of legal analysis. After reviewing other state and federal circuit cases dealing with this issue, it appears that other courts have utilized an outward probe of other jurisdictions for a legal application of factors to consider as well. *See Allstate Ins. Co. v. J.A.D. Coal Co.*, 2:05-CV-00029, WL 2006 2381880 (W.D.Va. August 16, 2006), *appeal docketed*, No. 06-1991, (4th Cir. 2006).

It is fundamental and well-settled that the terms of a contract of insurance are to be construed according to their ordinary and popular sense, unless the words have acquired a technical sense by the commercial usage. *Lewellyn v. State Farm Mut. Auto. Ins. Co.*, 438 S.W.2d 741, 547 (Tenn. 1969); *Swindler v. St. Paul Fire & Marine Ins. Co.*, 444 S.W.2d 147 (Tenn. 1969). As an initial matter, this is clearly a case relating to ownership, maintenance, or use of an auto. The allegations in the underlying tort complaint clearly state that the actions of CMH and MHBT were the proximate cause of an auto accident that resulted in the underlying damages suffered by the tort plaintiff. The proper issue for

consideration here is whether the vehicle driven by a MHBT employee was a covered auto under the BAC insurance policy.

In this regard, it is the Court's opinion that the "Any Auto" language, in combination with the surrounding circumstances, is sufficiently broad to encompass the subsequent categories "2" through "9" in the covered auto section of the policy. *Bamber v. Lumbermens Ins. Co.,* 680 A.2d 901 (Pa. 1996); *Donegal Ins. Co. v. Action Business Ctr. Inc.*, No. C.A. 97C-06-029, 1999 WL 1568618, at *7 (Del.Super.Ct. Oct. 21, 1999); *Hill v. Stoney Ridge Inn*, No. CA97-05-114, 1997 WL 746058, at *5 (Ohio.Ct.App. Dec. 1, 1997).

It is clear that symbol "9" relating to non-owned autos is the section of the insurance policy relevant to this matter. The key language in the non-owned auto section of the policy is "used in connection with your business." Courts have looked to two factors in determining whether a non-owned auto was used "in connection with [an insured's] business." The first factor is the extent to which the vehicle at issue was used in the course and scope of the insured's business. *U.S. Fid. & Guar. Co. v. Sanders*, No. Civ. A. 5:03-0702, 2006 WL 771914, at *3 (S.D.W.Va. March 23, 2006) (citing *Gore v. State Farm Mut. Ins. Co.*, 649 So.2d 162, 166 (La.Ct.App. 1995)); *Adams v. Thomason*, 753 So.2d 416, 421 (La.Ct.App. 2000); *Allstate Ins. Co.*, 2006 WL 2381880, at * 4. The second factor in determining whether the use was "in connection with" the insured's business is the extent to which an insured held or exerted a right of control over the vehicle and its driver. *Sanders*, 2006 WL 771914, at *3 (*citing Liberty Mut. Fire Ins. Co. v. Canal Ins. Co.*, Civ. A. No. A. 1:96cv261-D-D, 1997 WL 786760, at *7 (N.D.Miss. Nov. 13, 1997)); *Adams*, 753

So.2d at 421; *Allstate Ins. Co.*, 2006 WL 2381880, at * 5.

Relevant inquires for the above analysis include, but are not limited to, the following: 1) whether CMH dictated from where and to where the loads were being hauled, that is, the right to designate the route to be taken to the ultimate destination;2) whether CMH had its own employees drive MHBT's vehicles; 3) whether CMH paid any rental fee for the vehicles themselves; 4) whether CMH dictated the particular time table for hauling products or rather CMH just required MHBT to pick up the loads during business hours; 5) whether all of the products hauled belonged to CMH; 6) whether CMH required MHBT to have its own insurance; 7) whether MHBT had its own workmen's compensation insurance; 8) whether MHBT always used its own trucks and trailers to make the hauls; 9) whether MHBT paid for all maintenance and repairs for the vehicles, paid its own insurance on vehicles, paid employees, and paid employment taxes; 10) whether CMH made any employment related deductions from the payments made to MHBT; and 11) whether CMH was the primary source of hauling business for MHBT or whether MHBT did other hauling business without informing CMH or obtaining its consent. See *Liberty Mut. Fire Ins. Co.*, 1997 WL 786760, at *2.

Unfortunately, neither party has provided *any facts* that would prove or disprove the contention that the MHBT vehicle was being used in connection with CMH's business. CMH merely contends that "[a]t the time of the accident, MHBT was using the vehicle in connection with CMH's business, e.g., selling and delivering manufactured homes.... [and that the] vehicle is plainly covered under the nonowned autos category" (citations omitted).

USF&G comments that "CMH merely engaged MHBT to move the home from point A to point B;" "CMH did not own[,] hire, rent or borrow the transport vehicle and the driver of it was neither an agent, servant, nor employee of CMH;" "the MHBT transport vehicle was being used in MHBT's business, not in CMH's business;" and "CMH is not in the business of moving manufactured homes [but] MHBT is." These allegations are factually insufficient and conclusory. Therefore, the Court cannot rule upon the parties' motions for declaratory judgment at this time.

The Court has considered the cases cited by both parties. However, none of the cases cited parallel the instant situation as closely as the cases cited above. *Huddleston v. Luther*, 897 So.2d 887 (3rd Cir. 2005) might have provided some guidance to the Court if the trial court in that matter had not determined that the hauler/transport driver was an employee of the insured. Further, *Continental Ins. Co. v. Insurance Co. of North America*, 608 So.2d 1108 (La.Ct.App. 4th Cir. 1992) and *Liberty Mut. Ins. Co. v. Mid-Continent Ins. Co.*, 266 F.Supp.2d 533 (N.D.Tex. 2003) might have provided some guidance had the insureds had a connection, that is, a contract or business arrangement, with the drivers/autos involved in the accidents. The Court also distinguishes *Curry v. Iberville Parish Sheriff's Office*, 405 So.2d 1387, 1390 (1st Cir. 1981), where the negligent acts of an employee were failing to secure and protect a scene, which did not involve his automobile.

Finally, this Court finds that USF&G is not estopped from reserving its rights to assert the present defenses. It previously explained in its denial of coverage that the

9

subject auto was not being driven by a CMH employee.  While the basis of the denial could have been better articulated, USF&G was obviously asserting that the auto was not a covered auto under the automobile policy, as it has continued to argue in this matter.

In summary, the Court is without sufficient facts to determine declaratory relief, that is, whether the BAC policy provides coverage with respect to the underlying tort litigation.  Thus, the Court will deny the parties' cross-motions for summary judgment.  If the parties develop the facts more fully through discovery, they may re-file their motions for the Court's consideration.

### IV. Conclusion

For the reasons hereinabove set forth, plaintiff's motion for partial summary judgment [Doc. 11] and defendant's motion for summary judgment [Doc. 19] are **DENIED**, **with leave to re-file**.

**IT IS SO ORDERED.**

                **ENTER:**
                s/Thomas W. Phillips
                UNITED STATES DISTRICT JUDGE